UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JENNIFER LASTRA,                                    Case No.: 1:17-cv-4796

                              Plaintiff,

               v.                                   **COMPLAINT**

NEW YORK STATE,
NEW YORK STATE OFFICE OF MENTAL HEALTH,
ANN MARIE T. SULLIVAN, individually and in
her official capacity and
PAUL BURKE, individually,

                              Defendants.
---------------------------------------------------------------X

Plaintiff, JENNIFER LASTRA, through her counsel, Derek Smith Law Group, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991), Pub. L. No. 102-166 ("Title VII"), The New York State Executive Law, The New York City Administrative Code, 42 U.S.C. § 1983, and seeks damages to redress the injuries Plaintiff suffered as a result of *inter alia* gender discrimination, sexual harassment, hostile work environment, retaliation, and violation of her rights under the Equal Protection Clause.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

3. This action involves a Federal Question under Title VII of the Civil Rights Act.

4. The Court also has supplemental jurisdiction over both State and City Causes of Action.

5. Venue is proper in this District based upon Defendants residency and place of business within New York County, State of New York, within the Southern District of New York. 28 U.S.C. §1391(b).

6. On or around May 31, 2016, Plaintiff filed a charge of discrimination with the EEOC. The federal charge number is 520-2016-01994.

7. Around March 28, 2017, the EEOC mailed to Plaintiff a Right to Sue Letter.

8. Plaintiff completed all of his administrative prerequisites and filed his complaint within 90 days of receipt of the Right to Sue Letter.

## PARTIES

9. At all times material Plaintiff Jennifer Lastra (hereinafter also referred to as "Lastra" or "Plaintiff") is an individual woman who resides in the state of New York and resides the County of New York.

10. At all times material, Defendant NEW YORK STATE (hereinafter also referred to as "NYS" or "Defendant") is the State of New York government.

11. At all times material, Defendant NEW YORK STATE OFFICE OF MENTAL HEALTH (hereinafter also referred to as "NYS" or "Defendant") is an arm of the State of New York state government created and authorized under the laws of the State of New York.

12. At all times material, Defendant ANN MARIE T. SULLIVAN (herein after also referred to as "Sullivan" or "Defendant") is an individual woman who is a resident

of the State of New York. At the time of Plaintiffs employment, Sullivan served as the Commissioner of the New York State Office of Mental Health.

13. At all times material, Defendant NYS hired Defendant PAUL BURKE (herein after also referred to as "Burke" or "Defendant") an individual man who is a resident of the State of New York and resides in the City of New York, County of New York.

## STATEMENT OF FACTS

14. Defendant NYS' Office of Mental Health operates psychiatric centers across the State of New York, and also regulates, certifies and oversees more than 4,500 programs. These programs include various inpatient and outpatient programs, emergency, community support, residential and family care programs.

15. On or about August 16, 2007, Plaintiff commenced her employment with NYS at Defendant NYS' Manhattan Psychiatric Center location.

16. The Manhattan Psychiatric Center is a psychiatric hospital on Wards Island in New York City that treats hundreds of patients each year, offering a range of comprehensive inpatient and outpatient treatments for adults with mental illness.

17. While at Defendant NYS' Manhattan Psychiatric Center location, Plaintiff worked as a Rehabilitation Counselor 2 in a specialized program called the "Service for the Treatment and Abatement of Interpersonal Risk" (herein after also referred to as "STAIR" Program).

18. The STAIR Program is designed for patients with a history of interpersonal violence, but are psychiatrically stable and able to participate in a cognitive education program. The Program provides a very structured environment and an enriched cognitive approach to assist patients in anger management, reasoned thinking and

adaptive behavior without being a risk to themselves or the broader community. These patients typically had a criminal history, drug history, and mental illness.

19.  As a Rehabilitation Counselor 2 in the STAIR Program, Plaintiff would conduct individual rehabilitation assessments and therapy, review treatment plans, note the progress of her patients and respond to psychiatric emergencies. In addition, she managed 14 weekly therapeutic groups and community therapy meetings.

20.  On or about April 15, 2013, Plaintiff took a leave of absence due to surgery on her vertebra and she returned to work on or around March 26, 2014.

21.  During Plaintiff's leave of absence, Defendant NYS hired Defendant Burke to replace Plaintiff as a Rehabilitation Counselor 2 in the STAIR Program.

22.  When Plaintiff returned from her leave of absence, Defendant NYS removed Plaintiff from the STAIR Program and placed her in the Patient Worker Program.

23.  As a Rehabilitation Counselor 2 in the Patient Worker Program, Plaintiff worked in the vocational center helping patients with mental illness develop skills by informing wards of current job openings, interviewing, and hiring the patients. Once the patient workers were hired, Plaintiff would conduct orientation, organize activities, and supervise the patient workers.

24.  In or around April 2014, Defendant Burke requested a meeting with Plaintiff to discuss the STAIR Program. Plaintiff agreed to the meeting. This meeting was the first time Plaintiff formally met Defendant Burke.

25.  During this time, Plaintiff's office was located in the basement of the Meyer Building, which was an isolated area.

26. When Defendant Burke arrived, Plaintiff greeted Defendant Burke at her office door, shook his hand, and returned to her desk.

27. Instead of taking a seat and beginning the meeting that Defendant Burke had requested, he stood by the door and began sexually harassing Plaintiff.

28. By way of example, Defendant Burke leered in a sexual manner at Plaintiff's breasts.

29. During the meeting, Defendant Burke proceeded to make sexual expressions with his face by licking his lips, sticking out his tongue, and flicking and rolling his tongue to mimic oral sex on a woman.

30. Defendant Burke acted in the above manner, because he wanted to have sex with Plaintiff and because he wanted to sexually harass plaintiff.

31. Defendant Burke's sexual misconduct violated and shocked Plaintiff.

32. Plaintiff was horrified by the unprofessional and inappropriate nature of Defendant Burke's behavior.

33. Defendant Burke's sexual misconduct continued for fifteen to twenty minutes, at which point he finally walked away.

34. In or around July 2014, Defendant Burke approached Plaintiff's office without an invitation.

35. While standing at Plaintiff's door, Defendant Burke repeated the same facial gestures and sexual misconduct.

36. Defendant Burke again made sexual expressions with his face by licking his lips, sticking out his tongue, and flicking and rolling his tongue to mimic oral sex on a woman.

37. While standing in the doorway, Defendant Burke leered in a sexual manner at Plaintiff's breasts and vagina as stroked his erect penis through his pants and gyrated his pelvis area to mimic out sex.

38. Defendant Burke acted in the above manner, because he wanted to have sex with and because he wanted to sexually harass plaintiff.

39. Defendant Burke left Plaintiff's office after fifteen or twenty minutes of the inappropriate sexual misconduct.

40. Defendant Burke's sexual harassment violated and shocked Plaintiff.

41. Plaintiff was horrified and grew afraid for her safety while working at Defendant NYS' facility, especially since she was in a remote area.

42. After this second incident, Plaintiff did her best to evade Defendant Burke completely in order to escape future sexual harassment.

43. On or around February 4, 2015, Defendant Burke again appeared at Plaintiff's office door uninvited, this time under the pretense of borrowing video games for patients.

44. Suddenly, Defendant Burke jumped on Plaintiff as she sat in her office chair and began to rub his erect penis on her vagina while thrusting his pelvis in an attempt to rape Plaintiff.

45. Defendant Burke easily overpowered Plaintiff; Plaintiff is a petite woman 5'1 tall and around 110 pounds and Defendant Burke is around 5'10 with a muscular build.

46. No other employees were near Plaintiff's office at the time since they had left for lunch. She was completely alone with Defendant Burke with no one was close enough to help Plaintiff.

47. Defendant Burke's assault and attempted rape of Plaintiff continued for over one minute.

48. Plaintiff was only able to escape from under Defendant Burke's pounding body by sliding down her chair to the floor. Once Plaintiff slid out, she called a co-worker named Craig Martin on her office phone.

49. While Plaintiff was on the phone, Defendant Burke did not leave her office or say a word. He just looked at Plaintiff's body hungrily.

50. Plaintiff was afraid that she would be killed or strangled by Defendant Burke because he remained in her office.

51. Plaintiff begged Martin to come to her office under the pretense that he was late for a meeting.

52. Less than five minutes later, Martin came down to Plaintiff's office and saw a look of horror on Plaintiff's face.

53. Although Martin was now in Plaintiff's office, Defendant Burke refused to leave and stood awkwardly in silence for several minutes until Plaintiff specifically told him to leave so she could have her 'meeting' with Martin.

54. In or around early October 2015, Plaintiff first discovered that Defendant Burke also previously made lewd sexual gestures to other female employees.

55. Defendant Burke made the above explicit sexual behavior to other female co-workers so that he could have sex with the women and because he wanted to sexually harass the women.

56. In addition to fearing for her own life, Plaintiff felt responsible to report Defendant Burke's extreme sexual misconduct in order to stop other female employees or the

vulnerable mentally impaired female patients at Defendant NYS' Manhattan Psychiatric Center Office of Mental Health from being attacked or sexually harassed.

57. In or around mid-October 2015, Plaintiff made a report to Defendant NYS' supervisor, Beth Strobel, about the February 4, 2015 sexual assault by Defendant Burke in Plaintiff's office.

58. Defendant NYS' supervisor Strobel instructed Plaintiff to make an official report, and Plaintiff did so.

59. The next day, Plaintiff made an official report at Defendant NYS' Affirmative Action Office with supervisor Leroy Gadsen about the February 4, 2015 sexual assault by Defendant Burke in her office. Plaintiff also informed Gadsen of Defendant Burke's sexual harassment of Plaintiff and other female employees.

60. Plaintiff explained to Defendant NYS her fear that Defendant Burke would attack her or other female employees again.

61. Additionally, Plaintiff explained her fear that Defendant Burke was or would eventually sexually assault the vulnerable mentally impaired patients. These patients were extremely easy to take advantage of, because Defendant Burke's position in STAIR Program allowed open access to a vulnerable population without supervision.

62. Plaintiff asked Defendant NYS what management was doing to protect her and the patients.

63. In response, Defendant NYS told Plaintiff that all parties would be interviewed and that a thorough investigation would be undertaken.

64. Defendant NYS told Plaintiff that Defendant Burke was prohibited from interacting with Plaintiff and he would be prohibited of the building where Plaintiff worked.

65. Despite Defendant NYS' promise that Defendant Burke was prohibited from the building, in or around the summer of 2016 Plaintiff saw him inside the building on several occasions since Defendant NYS' empty promise was made.

66. In or around October 2015, Plaintiff took medical leave due to numerous herniated disks in her lower back and spinal compression.

67. On or around January 20, 2016, Plaintiff returned to work and learned that Defendant NYS moved her office to the 12th Floor of the Dunlap Building.

68. Plaintiff's new office was extremely isolated from all staff and patients.

69. Due to the sexual harassment and assault by Defendant Burke, Plaintiff was fearful and experienced extreme anxiety that Defendant NYS was setting Plaintiff up to be attacked again.

70. In or around February 2016, Plaintiff warned Defendant NYS that she feared for her safety but they did not heed her warning.

71. On or around March 27, 2016, someone broke into and ransacked Plaintiff's office. Plaintiff lost some money, credit cards, some medications, a paycheck, and personal souvenirs.

72. Plaintiff immediately made a complaint with Defendant NYS' Safety Department.

73. On or around May 25, 2016, Plaintiff was in an elevator of her building and when the doors opened Defendant Burke entered the elevator.

74. In the confines of the elevator, Defendant Burke began to sexually harassed Plaintiff again by making sexual expressions with his face by licking his lips, sticking out his tongue, and flicking and rolling his tongue to mimic oral sex on a woman.

75. Defendant Burke's sexual harassment disturbed Plaintiff and further violated, degraded, and victimized her.

76. As Defendant Buke was allegedly prohibited from the building where Plaintiff worked and prohibited from interacting with Plaintiff, he should have not been in the building or have entered the elevator.

77. The above occurred despite Defendant NYS' promise to keep Defendant Burke away from Plaintiff.

78. Plaintiff immediately reported this latest harassment to Defendant NYS' supervisors.

79. On or around June, 1, 2016, Plaintiff made a police report with the Sexual Victims Unit.

80. In all of the above instances, Defendant NYS took no reasonable or immediate action to help combat the hostile work environment and did nothing to protect Plaintiff from Defendant Buke.

81. Plaintiff is terrified of returning to work.

82. Plaintiff suffers from nightmares, anxiety, loss of appetite, and depression.

83. As a result of Defendants' inactions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

84. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer physical ailments, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

85. Plaintiff claims that Defendants discriminated against Plaintiff because of her gender, and because she complained or opposed the unlawful conduct of Defendants related to the above protected classes.

86. Plaintiff claims a continuous practice of discrimination and claims a continuing violations and makes all claims herein under the continuing violations doctrine.

87. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

88. The above are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

**AS A FIRST CAUSE OF ACTION: DISCRIMINATION**
**UNDER TITLE VII**
**[NOT AGAINST INDIVIDUAL DEFENDANTS]**

89. The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected Plaintiff on an ongoing continuous basis.

90. Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer Practices; it shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her/his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

91. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her sex.

**AS A SECOND CAUSE OF ACTION: RETALIATION**
**UNDER TITLE VII**
**[NOT AGAINST INDIVIDUAL DEFENDANTS]**

92. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

93.  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a)

provides that it shall be unlawful employment practice for an employer: "(1) to . . .

discriminate against any of his employees . . . because [s]he has  opposed         any

practice made an unlawful employment practice by this subchapter, or because [s]he

has made a charge, testified, assisted or participated in any manner in an

investigation, proceeding, or hearing under this subchapter."

94.  Defendant engaged in unlawful employment practice prohibited by 42 U.S.C.

§2000e *et seq*. by retaliating against Plaintiff with respect to the terms, conditions or

privilege of employment because of her opposition to the unlawful employment

practices of Defendant.

### AS A THIRD CAUSE OF ACTION: DISCRIMINATION
### UNDER NEW YORK STATE LAW
### [AGAINST ALL DEFENDANTS]

95.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this complaint.

96.  New York State Executive Law § 296 provides that, "1. It shall be an unlawful

discriminatory practice: (a) For an employer or licensing agency, because of an individual's

age, race, creed, color, national origin, sexual orientation, military status, sex, disability,

predisposing genetic characteristics, marital status, or domestic violence victim status, to

refuse to hire or employ or to bar or to discharge from employment such individual or to

discriminate against such individual in compensation or in terms, conditions or privileges

of employment."

97.  Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex/gender, together with sexual harassment, causing a hostile work environment and wrongful termination.

98. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION: RETALIATION
## UNDER NEW YORK STATE LAW
## [AGAINST ALL DEFENDANTS]

99.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

100. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

101. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment on the basis of Plaintiff's opposition to the unlawful practices of Defendants.

102. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

## AS A FIFTH CAUSE OF ACTION: AID AND ABET
## UNDER NEW YORK STATE LAW
## [AGAINST ALL DEFENDANTS]

103. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

104. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

105. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the unlawful, discriminatory, and retaliatory conduct as stated herein.

106. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

**AS A SIXTH CAUSE OF ACTION: DISCRIMINATION
UNDER NEW YORK CITY LAW
[AGAINST ALL DEFENDANTS]**

107. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

108. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

109. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of gender discrimination, race discrimination, and hostile work environment.

110. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

## AS A SEVENTH CAUSE OF ACTION: RETALIATION
## UNDER NEW YORK CITY LAW
## [AGAINST ALL DEFENDANTS]

111. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

112. The New York City Administrative Code Tide 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

113. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1)(e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A EIGHTH CAUSE OF ACTION: AID AND ABET
## UNDER NEW YORK CITY LAW
## [AGAINST ALL DEFENDANTS]

114. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

115. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

116.  Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A NINTH CAUSE OF ACTION: INTERFERENCE WITH PROTECTED RIGHTS UNDER NEW YORK CITY LAW
## [AGAINST ALL DEFENDANTS]

117.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

118.  New York City Administrative Code Title 8-107(19) Interference with protected rights.

119.  It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

120.  Defendants violated the section cited herein as set forth.

## AS A TENTH OF CAUSE OF ACTION: SUPERVISORY LIABILITY UNDER NEW YORK CITY LAW
## [AGAINST ALL DEFENDANTS]

121.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

122.  Section 8-107(13) entitled Employer liability for discriminatory conduct by an employee, agent or independent contractor provides:

A. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

B. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

   i. The employee or agent exercised managerial or supervisory responsibility; or

   ii. The employer knew of the employee's or agent's discriminatory conduct, and   acquiesced in such conduct or failed to take immediate and appropriate   corrective   action;   an   employer   shall   be deemed to have knowledge of an   employee's   or   agent's   discriminatory conduct where that conduct was known   by   another employee or agent   who exercised managerial or supervisory responsibility; or

   iii. The employer should have known of the employee's or agent's discriminatory   conduct and failed to exercise reasonable diligence to prevent such   discriminatory   conduct.

123.  Defendants violated the above section as set forth herein.


**AS AN ELEVENTH OF CAUSE OF ACTION: ASSAULT AND BATTERY**
**[AGAINST ALL COOPER INDIVIDUALLY]**


124.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

125.   That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness, and recklessness of Defendants, their agents, servants and/or employees, suddenly and without provocation did physically assault and batter Plaintiff herein.


**AS A TWELFTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF**
**EMOTIONAL DISTRESS**
**[AGAINST ALL DEFENDANTS]**

126. Plaintiff repeats and realleges each and every allegation made in the complaint as if they were set forth herein fully at length.

127. Defendants' behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

128. Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

129. Defendants caused Plaintiff to fear for Plaintiff's own safety.

130. Defendants' breach of their duties to Plaintiff caused Plaintiff to suffer numerous injuries as set forth herein.

131. As a result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS A THIRTEENTH CAUSE OF ACTION: GENDER MOTIVATED VIOLENCE PROTECTION ACT
## [AGAINST ALL DEFENDANTS]

132. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

133. N.Y. ADC. LAW § 8-903 states in relevant part: "For purposes of this chapter: a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction. b. "Crime of violence motivated by gender" means a crime of violence

18

committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

134.  N.Y. ADC. LAW § 8-904 Civil Cause of Action states in relevant part: "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

135.  N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter."

136.  Defendant's conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

137.  As a result of defendant's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

### AS A FOURTEENTH CAUSE OF ACTION: DISCRIMINATION UNDER FEDERAL LAW 42 U.S.C. § 1983 [AGAINST ALL DEFENDANTS]

138.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

139.  Plaintiff claims Defendants violated 42 U.S.C. § 1983, which states in pertinent

part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

140.  The Fourteenth Amendment of the United States Constitution states in relevant part that:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

141. Plaintiff is a female whom Defendants denied equal protection of the laws by discriminating against her on the basis of her gender.

142.  Defendants violated the above section as set forth herein.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

    **WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all damages including compensatory, emotional distress, statutory, punitive damages, attorneys fees and costs in an amount to be determined at the time of trial and awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful conduct.


Dated:    New York, New York
          June 24, 2017

                              Respectfully submitted,

                              DEREK T. SMITH LAW GROUP. P.C.
                              *Attorneys for Plaintiff*

                              _____/s/_____
                              By: Derek T. Smith
                              30 Broad Street, 35th Floor
                              New York, NY 10004
                              (212)-587-0760